**FEDERAL TRADE COMMISSION et al., Appellants,**

v.

**NASH–FINCH COMPANY, a corporation, Appellee.**

**No. 15978.**

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 8, 1960.

Decided Feb. 15, 1961.

to the order of November 3, 1958, is incidentally afforded by the reasoning of our opinion.

Messrs. Richard A. Solomon, Atty. Dept. of Justice, and Alan B. Hobbes, Asst. Gen. Counsel, Federal Trade Commission, with whom Mr. P. B. Morehouse, Acting Gen. Counsel, Federal Trade Commission, was on the brief, for appellants.

Mr. William Simon, Washington, D. C., with whom Messrs. Edward F. Howrey and Robert L. Wald, Washington, D. C., were on the brief, for appellee.

Before PRETTYMAN, BAZELON and FAHY, Circuit Judges.

FAHY, Circuit Judge.

In Sperry Rand Corp. v. Federal Trade Comm., —— U.S.App.D.C. ——, 288 F.2d 403, and Schick Inc. v. Federal Trade Comm., —— U.S.App.D.C. ——, 288 F.2d 407, we have held that Public Law 86–107,[1] enacted July 23, 1959, strengthening the enforcement provisions of the Clayton Act and bringing into effect new provisions governing the finality status of cease and desist orders of the Federal Trade Commission under the Clayton Act, does not apply to orders which were outstanding at the time of the enactment of said Public Law. One of the cease and desist orders outstanding at that time was against appellee, entered on consent under the Clayton Act on January 6, 1947.

In Sperry Rand and Schick the question of applicability of the newly enacted enforcement and penalty provisions to outstanding orders arose on petitions to this court under the standard review provisions of the Act. In the present case, however, the question was presented to the District Court by appellee's action for a declaratory judgment under 28 U.S.C. § 2201 and, alternatively, for review pursuant to section 10 of the Administrative Procedure Act.[2] Holding that the challenged provisions did not apply to the order against appellee the District Court granted appellee's motion for summary judgment, and the question is before us on appeal from the ensuing judgment.

The Commission contends that, the merits aside, the question was not one for either a declaratory judgment or for disposition under the Administrative Procedure Act. We think for

1. 73 Stat. 243 (1959), 15 U.S.C.A. § 21.

2. 60 Stat. 243 (1946), 5 U.S.C.A. § 1009.

the reasons now to be stated the court had jurisdiction to decide the issue under the Declaratory Judgment Act, and so we need not consider the Administrative Procedure Act.

As more fully set forth in our Sperry Rand opinion, the Commission by a public announcement on July 28, 1959, purported to apply the Act of July 23, 1959, to Clayton Act orders outstanding on the latter date, and gave sixty days from that date within which review proceedings could be initiated, at the expiration of which period the orders would become final if no review proceedings had been initiated. This action of the Commission gave rise to an actual controversy between appellee and the Commission. It was a ruling that placed the order against appellee in a new and significantly different status, cutting off the previously indefinite time within which review could be sought. It also purported materially to change the previous enforcement procedure and the effect of any violation of an order. Appellee was not merely a member of an industry subject to the Clayton Act. Appellee was a party bound by a particular order which had been entered under the Act. The ruling of the Commission applied directly to that order. The effect of the ruling was real and sufficiently immediate to bring the question of its validity within the power of the judiciary to decide as an actual controversy under Art. III, § 2 of the Constitution.[3] The more stringent enforcement provisions of the new law and the ruling of the Commission that they

applied to the order against appellee raised a practical question for appellee. The question was not too remote or theoretical to escape judicial consideration. Though further action to implement the ruling might make its impact even closer and more obvious, it is sufficiently close now.[4] The situation seems to us to meet the test stated by Mr. Chief Justice Hughes in Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 464, 81 L.Ed. 617, that is, it presents "a justiciable controversy" not merely "a difference or dispute of a hypothetical or abstract character" and is sufficiently "definite and concrete, touching the legal relations of parties having adverse legal interests." And see Public Service Commission v. Wycoff Co., 344 U.S. 237, 242–243, 73 S.Ct. 236, 97 L.Ed. 291, where, however, the decision was that no actual controversy had ripened. The application of the new statute to the order against appellee was a ruling that appellee must seek review in a manner not theretofore required or else the order would obtain a finality status which would cause a violation of it to bring down upon appellee stringent monetary penalties. Theretofore no penalties were possible unless as a result of contempt proceedings after judicial enforcement which in turn was after a violation which carried no penalties whatever.

■ The Commission contends, however, that the United States is an indispensable party, was not and could not have been sued since it had not consented, and, therefore, the action should have

---

3. In Evers v. Dwyer, 358 U.S. 202, 203, 79 S.Ct. 178, 179, 3 L.Ed.2d 222, the Court stated:

Of course, the federal courts will not grant declaratory relief in instances where the record does not disclose an "actual controversy." Public Service Commission of Utah v. Wycoff Co., 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291. In Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826, this Court said: "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be diffi-

cult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." In the present case we think that the record establishes the existence of an actual controversy which should have been adjudicated by the lower court.

4. Cf. United States v. St. Regis Paper Co., 2 Cir., 285 F.2d 607.

been dismissed. This contention rests upon the circumstance that the penalties prescribed for violation of Commission orders under Public Law 86–107 accrue to the United States and are recoverable by a civil action brought by the United States.[5] But appellee does not now complain of any action taken or threatened by the United States for penalties. Action of the Commission alone is now challenged. The controversy arises by reason of the legal effect of that action, which does not yet affect any interest of the United States except as that interest is represented by the Commission. It is true our decision that Public Law 86–107 does not apply to the order against appellee resolves a question about the scope of an Act of Congress regarding the status and enforcement of orders of an agency created by Congress, and in that sense is binding on the United States. But the doctrine of sovereign immunity does not require the courts to refrain from deciding a matter thus raised unless the United States as such is a party to the litigation. The interest of the United States in such a case is represented by the agency whose ruling is challenged. No property or money of the United States is involved. What is involved is a regulatory ruling of the agency charged with responsibility for administering the Act with respect to which the ruling was made. The ruling has not been made by the United States in any other sense. Where the agency of the United States whose ruling is here challenged is a party, the doctrine of sovereign immunity is not to be given expansive and formal meaning to prevent judicial consideration of the validity of the ruling. Had the Commission not made its ruling of July 28, 1959, the case might be different.

■ We have also considered the question whether the Declaratory Judgment Act may be resorted to notwithstanding we assumed jurisdiction in Sperry Rand and Schick upon petitions for review filed directly with our court under the procedures of the Clayton Act. Otherwise stated the question is whether the latter procedure is exclusive. The jurisdiction we assumed in Sperry Rand and Schick was of a somewhat special character. Technically it was to review cease and desist orders.[6] But after assuming jurisdiction for that purpose we dismissed the petitions upon reaching the conclusion no relief was available to petitioners because the attempted application of Public Law 86–107 to the orders against them was not valid. In a practical sense, therefore, we did not review the validity of the cease and desist orders. In any event we think one in the position of appellee is not precluded from adopting a different method for obtaining a judicial decision respecting the validity of the attempted application of Public Law 86–107 to the cease and desist order against appellee. The problems raised by the Commission ruling of July 28, 1959, are not the usual problems arising out of Commission orders; and we perceive no inroad upon the usual means for review of such orders by sustaining the jurisdiction of the District Court in the present case under the Declaratory Judgment Act, which seems to us to be a particularly appropriate vehicle for consideration and decision of the questions posed.

For the reasons set forth in our opinion in Sperry Rand the judgment of the District Court is

Affirmed.

5. § 1(l), 73 Stat. 245 (1959), 15 U.S.C.A. § 21(l).

6. We did not discuss in Sperry Rand, and we do not discuss now, the question whether we had jurisdiction to review the order of the Commission denying Sperry Rand's motion to modify the cease and desist order of November 3, 1958.