**CONTINENTAL BANK AND TRUST COMPANY, Appellant,**

v.

**William McChesney MARTIN, Jr., et al., Appellees.**

**No. 16620.**

United States Court of Appeals District of Columbia Circuit.

Argued March 16, 1962.

Decided May 3, 1962.

Mr. Peter W. Billings, Salt Lake City, Utah, of the bar of the Supreme Court of Utah, pro hac vice, by special leave of court, with whom Messrs. Barron K. Grier and John S. Nolan, Washington, D. C., were on the brief, for appellant.

Mr. John G. Laughlin, Jr., Atty., Dept. of Justice, with whom Asst. Atty. Gen. William H. Orrick, Jr., Messrs. David C.

27. Cf. N. L. R. B. v. Reliance Fuel Oil Corporation, 297 F.2d 94, 99 (2 Cir. 1961), certiorari granted 83 S.Ct. 1160.

Acheson, U. S. Atty., and Jerry C. Straus, Atty., Dept. of Justice, were on the brief, for appellees.

Before BAZELON, FAHY and BURGER, Circuit Judges.

FAHY, Circuit Judge.

An order of the Board of Governors of the Federal Reserve System, dated July 18, 1960, provides that the Continental Bank and Trust Company,[1] within six months "shall, by the sale of common stock for cash, effect an increase in its net capital and surplus funds in the amount of not less than $1,500,000." The Bank filed suit in the District Court for a declaratory judgment that the order was void, and for related relief. This appeal is from an order of the District Court of June 27, 1961, entered by Judge McGuire, dismissing the Bank's complaint for lack of jurisdiction.[2] We construe the court's action, as do the parties, as deciding that the Board's order of July 18, 1960, did not have the requisite finality for judicial review.

■■■ The question thus presented is to be determined under the provisions of the Administrative Procedure Act in light of the special facts of the case.[3] The critical provision of the Act is section 10(c), which provides that "every final agency action for which there is no other adequate remedy in any court shall be subject to judicial review."[4] Neither the Federal Reserve Act,[5] nor any statute, contains any "other adequate remedy," and it is not urged that the Board's order is reviewable under the general equity jurisdiction of the District Court. Moreover, if the agency's action is not final so as to be reviewable under the Administrative Procedure Act appellant is not helped on the question of jurisdiction by the Declaratory Judgment Act,[6] upon which it also relies; for that Act does not afford an independent basis for jurisdiction. It has to do with the kind of relief which might be available and not with jurisdiction. Schilling v. Rogers, 363 U.S. 666, 677, 80 S.Ct. 1288, 4 L.Ed. 2d 1478; Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671–72, 70 S.Ct. 876, 94 L.Ed. 1194.[7]

The facts upon which the question of finality is to be decided are now stated. The Bank, which is organized under the laws of the State of Utah, was admitted to membership in the Federal Reserve System February 1, 1952. The Board prescribed as one of the conditions [8] of the Bank's membership the following:

"2. The net capital and surplus funds of such bank shall be adequate in relation to the character and condition of its assets and to its deposit liabilities and other corporate responsibilities, and its capital shall not be reduced except with the permission of the Board of Governors of the Federal Reserve System."

The Board also advised the Bank that the Board felt its capitalization was low

1. We shall refer to the Board of Governors as the Board, and to the Continental Bank and Trust Company as the Bank.

2. The appeal is also from an order of the court entered August 5, 1961, denying the Bank's motion to alter or amend its judgment, to vacate the judgment, and for leave to file an amended and supplemental complaint. See footnotes 12 and 15, infra.

3. 60 Stat. 237 (1946), 5 U.S.C. §§ 1001–1011 (1958), 5 U.S.C.A. §§ 1001–1011.

4. 60 Stat. 243 (1946), 5 U.S.C. § 1009(c) (1958), 5 U.S.C.A. § 1009(c).

5. 38 Stat. 251 (1913), as amended, (codified principally in scattered sections of 12 U.S.C., 12 U.S.C.A.).

6. 28 U.S.C. § 2201 (1958).

7. Appellant correctly states that this court in Federal Trade Comm. v. Nash-Finch Co., 110 U.S.App.D.C. 5, 7, 288 F.2d 407, 409, finding that declaratory relief was justified, held that there was no need to "consider the Administrative Procedure Act." But this was said in a situation in which we had found jurisdiction in the District Court though not under the Administrative Procedure Act.

8. See 38 Stat. 259 (1913), as amended, 12 U.S.C. § 321 (1958), 12 U.S.C.A. § 321. And see 12 C.F.R. §§ 208.6(c), 208.7(a) (2) (1959).

in relation to its total assets, and particularly in relation to the amount of its risk assets. The Board stated further that it wished to emphasize that in approving the Bank's application for membership the Board was not to be construed as approving its capital position, or as indicating that the Board might not thereafter insist upon an increase in its capital.

On February 10, 1956, the President of the Federal Reserve Bank of San Francisco informed the Bank that its undercapitalized condition required corrective action, and that in the Board's opinion the capital structure should be strengthened by the sale of additional common stock for cash to provide not less than $1,500,000 net additional capital funds. The Bank was requested to advise the Board within sixty days of the steps it would take to bring about the increase in capitalization. After referring the matter to its stockholders the Bank declined to increase its capital as requested by the Board.

Thereafter the Board instituted a proceeding for the stated purposes of determining (1) the adequacy of the Bank's capital position, (2) what additional amount of capital, if any, would be necessary to provide the Bank with an adequate capital structure, and (3) what would be a reasonable period of time within which the Bank could effectuate any increase in its capital funds, if such were found to be needed, before being required by the Board to surrender its capital stock in the Federal Reserve Bank of San Francisco and forfeit its membership in the System for failure to comply.

In due course a great deal of evidence was taken before a Trial Examiner.[9] The Trial Examiner submitted his report and recommended decision on March 16, 1959, favorable to the Bank.[10] Upon exceptions filed by the Board's special counsel the matter was briefed and argued before the Board. The Board then entered its order of July 18, 1960, ruling that the Bank within six months should increase its net capital and surplus funds by not less than $1,500,000 by the sale of common stock for cash. This led to the suit of the Bank, the dismissal of which on jurisdictional grounds, as we have said, is the subject of this appeal.

■■ Following dismissal of the complaint the Board promptly, on June 28, 1961, served upon the Bank an order. It recited that it appeared to the Board that the Bank in failing to conform with the Board's order of July 18, 1960, had failed to comply with section 9 of the Federal Reserve Act[11] and, in particular, with the Bank's condition of membership imposed by the Board pursuant to the section. For these reasons the order provided for a hearing at which the Bank should show cause why the Board should not require the Bank to surrender its stock in the Federal Reserve Bank of San Francisco and forfeit all rights and privileges of membership in the System.[12]

We turn now to the reasons why we conclude that the Board's order of July 18, 1960, was not final agency action within the meaning of the Administrative Procedure Act. We recognize that, unlike the valuation of a carrier's property considered not to be a final order in United States v. Los Angeles & S. L. R.

9. There were other proceedings which intervened but which are not pertinent to this appeal. See Continental Bank & Trust Co. of Salt Lake City, Utah v. Woodall, 239 F.2d 707 (10th Cir. 1957), cert. denied, 353 U.S. 909, 77 S.Ct. 663, 1 L.Ed.2d 663.

10. The Trial Examiner recommended that the Board dismiss the proceeding for:
  (1) Want of jurisdiction or lawful authority;
  (2) Violation of the due process of law; and

(3) Failure to sustain the burden of proof.

11. 38 Stat. 259 (1913), as amended, 12 U.S.C. § 321 (1958), 12 U.S.C.A. § 321.

12. It was after this action of the Board in issuing a show cause order that the Bank filed its motion to alter or amend judgment, to vacate the judgment and for leave to file an amended and supplemental complaint, to which we have referred at note 2, supra.

R. Co., 273 U.S. 299, 309–10, 47 S.Ct. 413, 71 L.Ed. 651, the Bank here was directed to take certain action; and also unlike the situation in Eccles v. Peoples Bank, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784, where the question decided was that the District Court was not required to exercise its discretion to grant a declaratory judgment, there is no disavowal by the Board of an intent to terminate the Bank's membership in the System, comparable to the disavowal in Eccles of an intent to terminate the membership of the bank there involved so long as it maintained its independence. Moreover, distinctions which add some support to the Bank's contention may be drawn between still other cases and this one. It is obvious too that the Board's order of July 18, 1960, has the trappings of finality. But form and appearance are not determinative, cf. United States v. Los Angeles & S. L. R. R., supra, 273 U.S. at 309, 47 S.Ct. 413, 71 L.Ed. 651; and see the discussion in Rochester Tel. Corp. v. United States, 307 U.S. 125, 129–30, 59 S.Ct. 754, 83 L.Ed. 1147, and by this court in California Oregon Power Co. v. Federal Power Comm., 99 U.S.App.D.C. 263, 239 F.2d 426. And in the end we conclude for cogent reasons that the order was not final. In doing so we consider what the Board actually accomplished in the proceeding which led to its order of July 18, 1960, rather than what it set out to do but omitted to do. A stated purpose of the proceeding initially was to require the Bank to forfeit its membership in the System if it failed to comply with any increase in capital found to be needed, but as we shall see the order in fact falls short of carrying out this purpose.

The situation does not easily fit into any pattern designed by previous decisions. Moreover, this was the first time, we are advised, that the Board has conducted such a proceeding. Neither the Federal Reserve Act nor any other statute laid down a procedure to be followed.

Under that devised by the Board a hearing was concluded and the decision reached that the capital of the Bank should be increased within six months. The Bank was in terms ordered to bring about the increase. Yet we must consider the effect of all this in light of the provisions of the Act and the nature of further Board proceedings in the matter. Thus far there has been no definite legal consequence attributable to the order of July 18, 1960. There is no fine, penalty or other sanction which flows from the Bank's refusal to abide by that order. Forfeiture of membership in the System does not ensue. The Board's action has not had such an impact as has led the courts in other cases to hold administrative action to be final for judicial review. See, e. g., Frozen Food Express v. United States, 351 U.S. 40, 76 S.Ct. 569, 100 L.Ed. 730; Columbia Broadcasting Sys. v. United States, 316 U.S. 407, 417–25, 62 S.Ct. 1194, 86 L.Ed. 1563; Isbrandtsen Co. v. United States, 93 U.S. App.D.C. 293, 297–98, 211 F.2d 51, 55–56, cert. denied, 347 U.S. 990, 74 S.Ct. 852, 98 L.Ed. 1124. Further proceedings must be had before any definitive legal consequence arises. The statute provides:

"All banks admitted to membership under authority of this section shall be required to comply with the reserve and capital requirement of this Act * * *." [13]

It further provides, however, in section 9:

"If at any time it shall appear to the Board of Governors of the Federal Reserve System that a member bank has failed to comply with the provisions of * * * this title, or the regulations of the Board of Governors of the Federal Reserve System made pursuant thereto * * * it shall be within the power of the board after hearing to require such bank to surrender its stock in the Federal reserve bank and to forfeit

13. 38 Stat. 259 (1913), as amended, 12 U.S.C. § 324 (Supp. II, 1959–60), 12 U.S.C.A. § 324.

all rights and privileges of membership." [14]

Considering these two provisions together it is of special significance that though the Bank "shall be required to comply with the reserve and capital requirements of this Act," which for our purposes we assume includes the requirement of the order of July 18, 1960, nothing eventuates of a legal character upon failure to comply unless the Board proceeds under section 9 after "it shall appear * * * that a member bank has failed to comply with the provisions of * * * this title, or the regulations of the Board * * * made pursuant thereto * * *." It is then that it lies "within the power of the board after hearing to require such bank to surrender its stock in the Federal reserve bank and to forfeit all rights and privileges of membership." [15]

Action taken as a result of those proceedings no doubt would be "final agency action" which, if adverse to the Bank, could be judicially reviewed. It is possible, however, as is emphasized in the Board's brief, that such adverse action will not be taken in this case. Be that as it may, it has not yet been taken. Should it eventuate we may not assume the Board will seek to make its action effective so quickly as to preclude judicial review or refuse to allow the Bank a reasonable time in which to comply should the Bank elect to do so. In any

event the courts would not be impotent to decide, as matters may then appear, whether or not to intervene injunctively while review, if sought, would take its course.

We treat the problem in its own special setting, having in mind not only the particular private interest involved but the important public responsibilities of the Board. The reasonable latitude which must be accorded the Board in carrying out these responsibilities bears upon the court's problem in deciding at what point the Board's action should be considered as maturing into such finality as to permit the court to review its merits, bringing about a suspension of further Board consideration and action pending judicial proceedings, which might be protracted.

Such indirect damage as the Bank claims to have suffered by the action thus far taken must be deemed on the record before us to be speculative; and even if to a degree demonstrable, nevertheless is not of a character which turns the Board's action, otherwise not final, into that which is final. [16] Cf. Eccles v. Peoples Bank, supra, 333 U.S. at 434, 68 S.Ct. 641, 92 L.Ed. 784.

The question as to the validity of the Board's order of July 18, 1960, is merged, to the extent it may become necessary to be decided, with those further proceedings required before definitive action against the Bank can be taken by the Board.

14. 38 Stat. 259, 260 (1913), as amended, 12 U.S.C. § 327 (1958), 12 U.S.C.A. § 327.

15. By its "Order To Show Cause And For Hearing Thereon" entered June 28, 1961, referred to in footnote 12, supra, the Board instituted proceedings under this provision designed to elicit "why the Board should not require it [the Bank] to surrender its stock in the Federal Reserve Bank of San Francisco and to forfeit all rights and privileges of membership in the Federal Reserve System for failure to comply with said Condition No. 2 of respondent's [Bank's] membership."

16. With regard to the Bank's insured status if termination of its membership in the System does eventually occur, it should be

noted that under the provisions of the Federal Deposit Insurance Act whenever a state bank shall cease to be a member of the Federal Reserve System its insured status shall terminate "with like effect as if its insured status had been terminated * * * by the board of directors" after proceedings pursuant to 12 U.S.C. § 1818 (a), 12 U.S.C.A. § 1818(a). This subsection provides in pertinent part that upon the termination of the insured status of "any bank * * * the insured deposits of each depositor in the bank on the date of such termination * * * shall continue for a period of two years to be insured * * *." See 64 Stat. 879, 880 (1950), 12 U.S.C. §§ 1818(a), (b) (1958), 12 U.S.C.A. § 1818(a, b).

'Our reasoning leads to affirmance not only of the District Court's order of June 27, 1961, dismissing the complaint, but also its order of August 5, 1961, denying, *inter alia*, leave to file an amended and supplemental complaint to draw into question the validity of the Board's order to show cause referred to in footnote 2, as to which see also footnotes 12 and 15, supra.

Affirmed.