**ABBOTT LABORATORIES et al.,**
**Plaintiffs,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, and George P. Larrick, Commissioner of Food and Drugs, Defendants.**

**Civ. A. No. 2737.**

United States District Court
D. Delaware.

April 30, 1964.

Alexander L. Nichols and William S. Megonigal, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for plaintiffs, Gerhard A. Gesell, Stanley L. Temko, and Herbert Dym, of Covington & Burling, Washington, D. C., of counsel, for all plaintiffs except Merck & Co., Inc. and Pharmaceutical Manufacturers Association.

Hayward H. Coburn, of Drinker, Biddle & Reath, Philadelphia, Pa., of counsel, for Merck & Co., Inc.

Lloyd N. Cutler and Marshall Hornblower, of Wilmer, Cutler & Pickering, Washington, D. C., and C. Joseph Stetler, Chicago, Ill., and John K. Worley, Detroit, Mich., of counsel, for Pharmaceutical Manufacturers Association.

Alexander Greenfeld, U. S. Atty., and William J. Wier, Jr., Asst. U. S. Atty., Wilmington, Del., William W. Goodrich, Asst. Gen. Counsel for Food and Drugs; Joanne S. Sisk and Nancy N. Keefe, Attys., United States Department of Health, Education, and Welfare, Washington, D. C., for defendants.

CALEB M. WRIGHT, Chief Judge.

This action arises under the Federal Food, Drug, and Cosmetic Act, 52 Stat. 1040, as amended 21 U.S.C. § 301 et seq. ("the Act").

According to § 502(e) (1) (B) of the Act, 21 U.S.C. § 352(e) (1) (B), the labeling of a prescription drug shall cause that drug to be "misbranded" unless the established or generic name of the drug is printed prominently on any label or labeling material, as defined in the Act, in type half as large as any brand or proprietary name.[1]

The proprietary, or brand name, of a prescription drug is used by the manufacturer to identify the source of the drug. The proprietary name distinguishes the drug manufactured by one company from the drug with active ingredients of the same or similar chemical constitution produced by another compa-

---

1. The language of § 502(n) of the Act, 21 U.S.C. § 352(n) which applies to advertising is similar. This opinion covers both sections although only § 502(e) is specifically discussed.

ny. Thus a physician can, if he desires, exercise a choice among sources in prescribing drugs for his patient.

■ Most prescription drugs also have a non-proprietary or generic name. Such a name may be a systematic chemical name, a common name, or an official name used in some official compendium or designated by the Secretary of Health, Education and Welfare. This is the "established name" which § 502(e) (1) (B) requires to be prominently displayed on drug labeling. If this requirement is not met and a misbranded drug is introduced into interstate commerce (a) the drugs may be seized and forfeited, (b) the introduction of such drugs into interstate commerce may be enjoined, (c) the persons who cause introduction of the misbranded drugs into interstate commerce may be subject to criminal prosecution.

In February, 1963, the defendant, Commissioner of Food and Drugs proposed the adoption of certain new regulations under the Act. The final regulations, 28 Fed.Reg. 6375, were promulgated in June, 1963 and were effective on publication. It is these regulations which are under attack in the present proceeding. Under the new regulations the Act is interpreted to require that the established or generic name be placed in conjunction with every appearance of the proprietary name of the drug on labels and advertising.

Thirty-seven drug companies and the Pharmaceutical Manufacturers Association (PMA) have joined as plaintiffs to challenge the every time requirement. They claim that the statute does not direct or authorize the defendant Commissioner to impose the requirement and that the Commissioner's regulations are therefore null and void. They seek a declaratory judgment to that effect and an injunction restraining defendants from enforcing the disputed regulation. The plaintiffs assert that in the absence of such relief they will be forced to choose between flouting the regulation and possibly incurring penalties or reprinting great quantities of advertising material which already complies with the statute as plaintiffs interpret it. This material, including brochures, price lists, catalogues and labels prominently sets forth the generic name of the prescription drug involved but it does not meet the every time requirement.

At the outset, a host of jurisdictional problems are presented.

## I. Venue

The defendants, Secretary of Health, Education and Welfare and Commissioner of Food and Drugs claim that venue is improper as to twenty-six of the thirty-seven plaintiff corporations. These twenty-six are not incorporated in the State of Delaware.

The applicable venue statute, 28 U.S.C. § 1391(e) reads:

"A civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which: (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action."

Defendants admit that the pharmaceutical companies incorporated in Delaware are residents of Delaware within 28 U.S.C. § 1391(e) (4). They maintain that the other plaintiffs fall without the bounds of the venue provision because they do not reside in the forum state.

28 U.S.C. § 1391(e) does not define residence as applied to corporations. Elsewhere in the venue statute, however, at 28 U.S.C. § 1391(c) it is provided:

"A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

Plaintiffs argue that this broad definition of residence should be applied to the twenty-six contested parties. Defendant counters that 28 U.S.C. § 1391(c) applies only to corporations appearing as defendants and not to plaintiff corporations because it refers only to corporations which "may be sued."

The interpretation of 28 U.S.C. § 1391 (c) presents no novel question. There is a classic split of authority among the federal courts as to whether the statute applies to defendant corporations only or to plaintiff and defendant corporations alike.[2] Nor do the commentators find ground for agreement.[3]

Those courts which conclude that 28 U. S.C. § 1391(c) redefined the law of corporate residence for corporations as plaintiffs as well as corporations as defendants rely on interpretation of the last words of the section, "and such judicial district shall be regarded as the residence of such corporation for venue purposes." These words, it is argued, would be superfluous unless applied to corporations as plaintiffs, for the first part of the section grants the right to sue corporations as defendants where they are incorporated, or licensed to do business, or are actually doing business.

Judge Dimock's statement is representative:

"I do not feel at liberty to attribute to Congress any * * * tautology. The statute first gives permission to sue a corporation in any district where it is incorporated or licensed or doing business. It then declares that such district shall be regarded as its residence. No one has suggested any reason for that declaration unless it was to give permission to the corporation to sue others in such district in addition to the previously given permission given to others to sue the corporation in any such district." Southern Paperboard Corporation v. United States, 127 F.Supp. 649, 650 (S.D.N.Y. 1955).

Professor Moore has found a meaning for the disputed words which does not comport with the above.

"The language of the first clause of subsection (c) restricts the subsection to a corporation which 'may be sued.' And this restriction does not

---

2. Defendant corporations only:
Chicago & North Western Ry. Co. v. Davenport, 94 F.Supp. 83 (S.D.Iowa 1950); United Merchants & Manufacturers Inc. v. United States, 123 F.Supp. 435 (M.D.Ga.1954) [Dicta]; Albright & Friel, Inc. of Delaware v. United States, 142 F.Supp. 607 (E.D.Pa.1956); Nebraska-Iowa Bridge Corporation v. United States, 158 F.Supp. 796 (D.Neb.1958); Robert E. Lee & Co. v. Veatch, 301 F. 2d 434 (4 Cir. 1961) cert. den. 371 U.S. 813, 83 S.Ct. 23, 9 L.Ed.2d 55 (1962).
Plaintiff and defendant corporations:
Freiday v. Cowdin, 83 F.Supp. 516 (S. D.N.Y.1949); Hadden v. Barrow, Wade, Guthrie & Co., 105 F.Supp. 530 (N.D. Ohio 1952); Southern Paperboard Corporation v. United States, 127 F.Supp. 649 (S.D.N.Y.1955); Eastern Motor Express, Inc. v. Espenshade, 138 F.Supp. 426 (E.D.Pa.1956); Standard Insurance Company v. Isbell, 143 F.Supp. 910 (E. D.Tex.1956); Travelers Insurance Company v. Williams, 164 F.Supp. 566 (W. D.N.C.1958) aff'd. 265 F.2d 531 (4 Cir. 1959); Wear-Ever Aluminum, Inc. v. Sipos, 184 F.Supp. 364 (S.D.N.Y.1960);

Consolidated Sun Ray, Inc. v. Steel Insurance Company of America, 190 F.Supp. 171 (E.D.Pa.1961).

3. Defendant corporations only:
1 Moore, Federal Practice 1503 (2d ed. 1950); Ohlinger's Federal Practice (Rev. ed.) Vol. 1-A, p. 297; Comment, "The Corporate Plaintiff and Venue under Section 1391(c) of the Judicial Code, 28 Univ.Chi.L.Rev. 112 (1960); Case note, 48 Va.L.Rev. 968 (1962).
Plaintiff and defendant corporations:
Wright, Federal Courts, § 42 (1963); Wechsler, Federal Jurisdiction and the Revision of the Judicial Code, 13 Law & Contemporary Problems 216, 240 note 126; Note, The Proposed Revision of the Federal Judicial Code, 60 Harv.L.Rev. 424 (1947); Case note, 76 Harv.L.Rev. 641 (1963); 1 Barron and Holtzoff, Federal Practice and Procedure, 387-88 (Rev. ed. 1960) citing note, Federal Venue and the Corporate Plaintiff: Judicial Code § 1391(c); 28 Ind.L.J. 256 (1953) and note, Federal Venue and the Corporate Plaintiff, 37 Ind.L.J. 363 (1962).

860

make superfluous the second, and concluding clause that 'such judicial district [in which the corporation is incorporated or licensed to do business or is doing business] shall be regarded as the residence of such corporation for venue purposes.' This clause serves a purpose in laying venue, in a transitory action, in a defendant's district where there are multiple defendants residing in different districts of the same state; and also in the case where defendants reside in different divisions of the same district or different districts in the same state. * * *" 1 Moore, Federal Practice 1503 2d ed. 1963.

Nonetheless, Moore does not place his chief reliance on this interpretation in deciding that the statute defines residence for corporate defendants only. He emphasizes the fact that the Reviser's Note fails to indicate any intention to effect what would be a far-reaching change as to residence of corporate plaintiffs.

This position is seconded in the recent opinion, Robert E. Lee & Co. Inc. v. Veatch, 301 F.2d 434 (4 Cir. 1961) cert. den. 371 U.S. 813, 83 S.Ct. 23, 9 L.Ed.2d 55 (1962). There the court concluded that Congress would have designed a more sweeping language for Section 1391 (c), such as using "all corporations" in the second clause "instead of the restrictive term 'such corporation'", if Congress had intended to do more than codify the rule of Neirbo Co. v. Bethlehem Shipbuilding Corp. Ltd., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939), [that a corporation waives its venue privilege not to be sued in a state by obtaining a license to do business there].

■ Because of the well-balanced forces of reason on either side of this controversy a gentlemanly disagreement will no doubt continue among the courts and commentators until settled by Congress or the Supreme Court. This court is persuaded by those who argue that Congress did not intend the sweeping change which plaintiffs assert and that for purposes of 28 U.S.C. § 1391(c) residence is defined only for corporate defendants. The court also holds that the residence of a corporation for purposes of 28 U.S.C. § 1391(e) is defined in Section 1391(c). The twenty-six corporations which are not incorporated in Delaware are not properly before the court as plaintiffs in the present action.

II. The PMA and Standing to Sue

The next jurisdictional objection raised by the defendants concerns the standing to sue of the PMA. It is asserted that there is no actual controversy between PMA and the defendants. The regulations promulgated by the Commissioner do not apply to the Association; it neither manufactures nor distributes drugs and it has no occasion, therefore, to either label drug products or advertise them.

The PMA claims to be harmed in a strict dollars and cents fashion by the disputed regulations. The Association points out that under Article III of its by-laws membership dues are based on the annual business of its members. Rules which affect the income of its members therefore affect PMA.

■ It is not in its own right, however, but as the representative of some 140 drug companies that this court finds PMA to have standing to sue. In National Motor Freight Traffic Association, Inc. v. United States, certain associations of motor carriers sought to set aside a decision of the Interstate Commerce Commission. The Government argued that the plaintiffs lacked standing to sue because they were associations of carriers rather than the carriers actually affected by the contested order. The lower court agreed with the Government's contention holding that the associations were not qualified to sue because they suffered no legally cognizable injury "except in the remote sense that the problems of their members are their concern." National Motor Freight Traffic Association, Inc. v. United States, 205 F.Supp. 592, 593 (D.C.1962) aff'd. 372 U.S. 246, 83 S.Ct. 688, 9 L.Ed.2d 709 (1963).

The Supreme Court specifically rejected this ground for decision:

"The appellants are associations of motor carriers, authorized under 49 USC § 5b, and perform significant functions in the administration of the Interstate Commerce Act, including the representation of member carriers in proceedings before the Commission. Since individual member carriers of appellants will be aggrieved by the Commission's order, and since appellants are proper representatives of the interests of their members, appellants have standing to challenge the validity of the Commission's order in the District Court." National Motor Freight Traffic Association, Inc. v. United States, 372 U.S. 246, 247, 83 S.Ct. 688, 689, 9 L.Ed.2d 709 (1963).

The defendants here make much of the Supreme Court's reference to the authorization of motor carrier associations under 49 U.S.C. § 5b. That section, however, does no more than insulate associations approved by the I.C.C. from violation of the antitrust laws. The crux of the opinion centers on the association as a representative of members who are individually harmed. In that sense, the PMA is similar to the associations in the Motor Freight Traffic case. It represents its members before the Food and Drug administration just as the motor carrier associations appeared in their members' behalf before the I.C.C.

The PMA is a proper representative of the interests of its member drug companies and has standing to challenge the validity of the defendant Commissioner's regulations in this Court.

### III. Propriety of a Judicial Determination at This Time

Next the defendants put forward two related arguments which go to the propriety of adjudication at this stage in the proceedings. First, they say that there is no actual controversy between the plaintiffs and defendants as required by the Declaratory Judgment Act, 28 U. S.C. § 2201.[4] Second, they maintain that regulations interpretive in nature, are reviewable only as they may later be called into question in an enforcement action and not upon their promulgation.

If a regulation is final and a justiciable controversy exists as to its legality, the regulation is ripe for review. A justiciable controversy arises where a plaintiff is confronted with substantial present or imminent harm. The regulations before the court are final and a justiciable controversy exists. The very presence of a threat of harm makes the regulations ready for review. Davis, Administrative Law Treatise, § 21.07.

Defendants say that plaintiffs should not be permitted a declaratory judgment but should have to await an enforcement proceeding before they can call the contested regulations into question. Plaintiffs may have judicial review of interpretive regulations upon their promulgation without awaiting some ultimate enforcement. Frozen Food Express v. United States, 351 U.S. 40, 76 S.Ct. 569, 100 L.Ed. 910 (1956); Federal Trade Commission v. Nash-Finch Company, 110 U.S.App.D.C. 5, 288 F.2d 407. They need not await an action which would only make the threat of harm more pressing. The possibility of harm is already apparent to this court. The regulations in issue have placed them in a dilemma. Either they must comply with the every time requirement and incur the costs of changing over their promotional material and labeling or they must follow their present course and risk prosecution. It is of no moment that the Attorney General and not the Food and Drug Administration may enforce these rules. Nor does it matter that the Attorney General has not yet threatened enforcement. Surely, the Commissioner

4. Plaintiffs also claim to be here under § 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009. Since the court finds that they are properly here for a declaratory judgment it is not necessary to discuss the procedure for review of administrative rule making.

does not announce regulations which he does not intend to enforce by any and every lawful means. From the plaintiffs' point of view danger is imminent. The regulations of which they complain are ripe for review. The declaratory judgment procedure is specifically suited for the determination of controversies where the plaintiffs must either comply with a contested regulation or continue their present course of conduct at their peril. To bar the courts to plaintiffs would be to do an injustice.

### IV. The Attorney General as an Indispensable Party

 The defendants next argue that the action cannot proceed because an indispensable party, the Attorney General, has not been joined. They point out that proceedings to enforce the Act or to restrain violations of the Act are to be brought in the name of the United States and that it is the Attorney General in his discretion who is granted authority to bring actions enforcing the Act.

Going back to first principles, indispensable parties are persons who have such an interest in a controversy that a final decree cannot be concluded without affecting that interest. 3 Moore, Federal Practice, 2150 (2d ed. 1963). It would seem unnecessarily cumbersome to hold that the Attorney General is such a party here. The decree sought here does not operate against the Attorney General except in a secondary fashion. He will not be forced to do anything no matter how the court decides. It is the defendants upon whom the benefit or blight of this decision will fall. The decree will expend itself on the defendants and not the Attorney General. The Attorney General is not a party indispensable to the instant litigation. See Federal Trade Commission v. Nash-Finch Company, supra.

### V. The Present Controversy as an Unconsented Suit against the United States

 Finally, defendants argue that this litigation is an unconsented suit against the United States.

They point out that the doctrine of sovereign immunity intervenes where the relief sought would interfere with the public administration or restrain the Government from acting or compel it to act. One of the cases cited in accord with this proposition is Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). However, in Larson a significant exception is noted:

"There may be, of course, suits for specific relief against officers of the sovereign which are not suits against the sovereign. * * * [W]here the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are ultra vires his authority and therefore may be made the object of specific relief. It is important to note that in such cases the relief can be granted, without impleading the sovereign, only because of the officer's lack of delegated power." Larson v. Domestic and Foreign Commerce Corp., Ibid. 337 U.S. at 689–690, 69 S.Ct. at 1461, 93 L.Ed. 1628.

In their complaint plaintiffs assert:

"20. These regulations are arbitrary and capricious and not in accordance with law, and constitute an unwarranted and unlawful directive to plaintiff companies in excess of the defendants statutory authority and short of statutory right, and contrary to the statutory provisions on which they purport to be based. * * * *"

The relief plaintiffs seek is a declaration that the statutory provisions on which the contested regulations are based "do not impose, or authorize the defendants to impose" the requirements which the regulations embody.

This court does not regard plaintiffs' claim that defendants have acted outside the scope of their authority as frivolous. As the Larson case notes, a suit challenging the unauthorized actions of government officials is not a suit against the United States. This action may go forward in the absence of the United States consent to be sued. See, Philadelphia Company v. Stimson, 223 U.S. 605, 32 S. Ct. 340, 56 L.Ed. 570 (1912).

The decision of the merits of this case does not require as lengthy discussion as does negotiation of the procedural maze leading to the merits. The proposition is simple: Congress has enacted legislation setting out rules which must be complied with if a drug is to be properly branded. The Commissioner of Food and Drugs has issued regulations interpreting the Act of Congress. Plaintiffs attack these regulations.

Regulations of the type with which the court is here concerned are valid unless unreasonable or inconsistent with the statute. Davis, Administrative Law Treatise, § 5.05 (1958). The statute and the disputed regulation are here set out.

"Sec. 502. A drug or device shall be deemed to be misbranded—

\* \* \* \* \* \*

"(e) (1) If it is a drug, unless (A) its label bears, to the exclusion of any other nonproprietary name (except the applicable systematic chemical name or the chemical formula), (i) the established name (as defined in paragraph (2) of this subsection) of the drug, if such there be, and (ii), in case it is fabricated from two or more ingredients, the established name and quantity of each active ingredient \* \* \* and (B) for any prescription drug the established name of such drug or ingredient, as the case may be, on such label (and on any labeling on which a name for such drug or ingredient is used) is printed prominently and in type at least half as large as that used thereon for any proprietary name or des-ignation for such drug or ingredient: *Provided,* That to the extent that compliance with the requirements of clause (A) (ii) or clause (B) of this paragraph is impracticable, exemptions shall be established by regulations promulgated by the Secretary."

\* \* \* \* \* \*

"Section 1.104(g), 28 Fed.Reg. 6375 (June 20, 1963):

"§ 1.104 Drugs; statement of ingredients.

\* \* \* \* \* \*

"(g) (1) If the label or labeling of a prescription drug bears a proprietary name or designation for the drug or any ingredient thereof, the established name, if such there be, corresponding to such proprietary name or designation, shall accompany each appearance of such proprietary name or designation. The established name shall be placed in direct conjunction with the proprietary name or designation, and the relationship between the proprietary name or designation and the established name shall be made clear by use of a phrase such as 'brand of,' preceding the established name, or by brackets surrounding the established name.

"(2) The established name shall be printed in letters that are at least half as large as the letters comprising the proprietary name or designation with which it is joined, and the established name shall have a prominence commensurate with the prominence with which such proprietary name or designation appears, taking into account all pertinent factors, including typography, layout, contrast, and other printing features."

It is clear from the legislative history that the chief concern of Congress in enacting § 502(e) was the prominent display on labeling of the generic name of a drug. Congress intended to put an end to the previous common practice whereby drug companies would mention the ge-

neric name of a drug in an inconspicuous place in microscopic print in order to enhance the value of their own trade name. Congress took pains to assure that the generic name would be printed in type large enough to be seen. This was accomplished by specifying that the generic name be printed in type at least half as large as that used for the trade name.

Not only was Congress concerned with the size of the display of the generic name, it was also concerned with the position of that display. To that end, Congress required that the generic name be placed "prominently" on labeling. This was the concern of Congress. It is necessarily the concern of the court.

Congress did not specify what it meant by prominent display. Would one mention of the generic name in juxtaposition with the first mention of the trade name suffice? In printed matter comprising several pages should the generic name be mentioned on each page at least once, perhaps at the top of the page? Congress laid down no guide lines.

■ The defendant Commissioner has interpreted the language of Congress with a broad sweep. He says that the generic name must appear at every mention of the trade name. His interpretation is inconsistent with the statute. The very word which he has seized on to support the every time requirement belies the argument that Congress intended the generic name be used every time. If Congress had intended that the generic name appear every time the brand name appears there would be no reason to use the word "prominently". The use of the word shows Congress was concerned that the generic name appear in a conspicuous place. If the generic name appeared with every mention of the trade name the requirement of prominence would be unnecessary.

The defendants maintain that the legislative history indicates the adoption by Congress of the every time requirement. They rely heavily upon a statement by Senator Kefauver in which the Senator explained the Conference Committee's rejection of an amendment offered by Congressman O'Brien in the House. The O'Brien amendment would have required that the generic name appear "at the first place, and at the most conspicuous place if other than the first place, at which such proprietary name for such drug * * is used. * * *" 108 Cong.Rec. 21081 (1962).

Kefauver explained,

"This limitation was not accepted by the conferees. Thus the established name of a prescription drug must appear in type at least half as large as the trade name wherever the latter is used in drug promotional matter, including package inserts, and so forth." 108 Cong.Rec. 22039 (1962).

First, it is not clear that Kefauver's characterization of the O'Brien amendment as a limitation is accurate. Second Kefauver's term "wherever" is not free from ambiguity. It could mean that the generic name must appear each time the trade name is mentioned. On the other hand, it could mean that the generic name must appear on a label or brochure or medicine box wherever the trade name is used. Apparently Kefauver favored the every time requirement. But nowhere in the legislative history is there evidence to show that other members of the Congress favored the every time requirement or that they were aware that "prominently" should have a special meaning.

The views of Senator Kefauver, in this instance, cannot override what the court believes is the general Congressional intent. This is especially true since the expression of those views are circumscribed and open to doubt.

If Congress had meant that the generic name should appear with every mention of the trade name, it could have said so. It has not. It has said only that the generic name must appear prominently. The statute will not bear the interpretation which the defendants have put upon it.

Submit order in accordance herewith.