**UNITED REFINING COMPANY,
Plaintiff,**

v.

**DEPARTMENT OF ENERGY and
Charles W. Duncan, Defendants.**

**Civ. A. No. 79–144 Erie.**

United States District Court,
W. D. Pennsylvania.

Jan. 17, 1980.

William L. Standish, IV, James H. Hardie, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., Daniel Joseph, Warren E. Connelly, Joseph T. Casey, Jr., Betty Leach, Akin, Gump, Hauer & Feld, Washington, D. C., for plaintiff.

Alice Daniel, Asst. Atty. Gen., Civ. Div., Nancy M. Floreen, Atty., Dept. of Justice, Washington, D. C., Robert J. Cindrich, U. S. Atty. for the Western District of Pa., Pittsburgh, Pa., for defendants.

## OPINION

WEBER, Chief Judge.

The plaintiff has sued for relief by declaratory judgment and injunction against certain petroleum pricing regulations established by the Department of Energy (DOE) (10 C.F.R. § 212.83(d)(1)). Its complaint basically alleges that the regulations were improperly adopted under the Administrative Procedure Act, as amended, 5 U.S.C. § 551 et seq. (1966) and the Emergency Petroleum Allocation Act, as amended, 15 U.S.C. § 751 et seq. (1973), and exceed the statutory authority.

The DOE has responded by a motion to dismiss for failure to pursue the available administrative remedies and because the controversy was not ripe for judicial review.

The administrative enforcement process has already begun. On October 13, 1977 the DOE issued an "Issue Letter" to which United responded on the merits. On April 17, 1978 the DOE then issued a "Notice of Probable Violation" (NOPV). (We will attempt to keep the jungle of acronyms cleared here, but the parties are familiar with them and we are compelled by an instinct for space saving to employ them).

This was the beginning of a long, complex and multistaged administrative proceeding, which calls for the review of vast quantities of records under a Special Report Order (SRO) issued January 10, 1979.

Plaintiff's response to the DOE proceedings raised the issues on which it relies here, the procedural and substantive invalidity of the regulation. DOE apparently will proceed administratively on the assumed validity of the regulations which it is proceeding to enforce and never reach the issue which United seeks to raise here directly. When the matter is ripe for judicial review in the DOE's opinion the issue raised here will be again before the court.

We believe that judicial deference to the doctrines of exhaustion of the administrative procedure and ripeness for review are inapplicable here.

We feel that it is highly advantageous in the efficient conduct of the business of the courts to face the immediate legal issues, which might be dispositive of the whole lawsuit, and that this conclusion is well supported by simple common sense as well as sound judicial precedent. If the regulations were not properly adopted, or are outside the statutory authority, this is a matter that can be attacked directly without consideration of the mountains of evidence that will be required to be produced before the administrative agency to determine whether plaintiff has complied with the extremely complex regulatory scheme.

■ This rationale is supported by the doctrine of bypassing the administrative process where there is no clear Congressional mandate requiring administrative exhaustion. The most prominent landmark here is *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), (of which we have a poignant personal recollection), where the Court found no clear and convincing evidence of a clear Congressional purpose to exclude review by the Courts, and required the trial courts to restrict access to judicial review only on a showing of clear and convincing evidence of a legislative intent to preclude judicial review.

We find that judicial restraint is not mandated by the statute here. The Economic Stabilization Act, which controls United's case, specifically provides that:

"Any person suffering legal wrong . . arising out of this title, or order, or reputation issued pursuant thereto, may bring an action in a district court . . . of the United States, without regard to the amount in controversy, for appropriate relief . . . ." See 12 U.S.C. § 1904, note § 210(a).

In *Standard Oil Co. v. Federal Energy Administration*, 440 F.Supp. 328, 358 (N.D. Ohio 1977) the Court held that the "suffering legal wrong" language of the Economic Stabilization Act is identical to the "suffering legal wrong" language of the Administrative Procedure Act construed by the Supreme Court in *Abbott*. The *Standard Oil* court found that the judicial review provisions of the Economic Stabilization Act, the additional statutory authority for judicial review of F.E.A. decisions in the Federal Energy Administration Act, and the legislative history of the Economic Stabilization Act, the Emergency Petroleum Allocation Act, and the Federal Energy Administration Act, "contain no suggestion that Congress intended to preclude pre-enforcement, declaratory judgment, judicial review of the FEA's final decisions." 440 F.Supp. at 359.

Even as a matter of judicial discretion we are of the opinion that the administrative framework set up for enforcement proceedings and the requirement that administrative remedies be exhausted are not properly considered here. Plaintiff United seeks judicial preenforcement relief and challenges the procedural and substantive validity of DOE's fictitious recovery rule. This is a purely legal issue. We do nothing to resolve this legal issue if we require United to wait and appeal a final decision by DOE that United has violated the rule. Whether United has violated the rule is irrelevant; the validity of the fictitious recovery rule itself is contested. This determination is

not properly left hanging pending the exhaustion of enforcement proceedings.[1]

> "A Court should not stand aside just because there is available to the plaintiffs some collateral agency proceedings that hold out the possibility of some kind of relief." *Phillips Petroleum Co. v. Federal Energy Administration*, 435 F.Supp. 1239, 1248 (D.Del.1977), citing *Greene v. United States*, 376 U.S. 149, 84 S.Ct. 615, 11 L.Ed. 24, 576 (1964).

In *Pennzoil Co. v. Department of Energy*, 466 F.Supp. 238, (D.Del.1979), plaintiff brought suit for judicial determination of the validity of a DOE ruling and DOE moved to dismiss. The Court held that the oil company was not required to exhaust administrative remedies before seeking judicial determination of the rule's validity because the exception procedure "provides no means of attacking the general application, or validity, of the agency action" and the interpretation procedure "assumes the validity of the ruling." 466 F.Supp. at 244.

> "Because the issue Pennzoil seeks to have adjudicated could not be addressed in either an interpretation or an exception proceeding, it will not be required to exhaust those proceedings before coming to Court." 466 F.Supp. at 244.

■ The policies underlying the exhaustion doctrine will not be served if we deny judicial review and require exhaustion here. The development of a factual record by DOE and the application of DOE's technical expertise to the full factual record are not required to decide the legal issues raised. Furthermore, requiring exhaustion in this case does not assure the efficient utilization of government resources. *Phillips Petroleum Co. v. Federal Energy Administration*, 435 F.Supp. at 1248; *Pennzoil Co. v. Department of Energy*, 466 F.Supp. at 244. As a matter of fact, we feel that after all administrative remedies have been exhausted and years have passed, the very same legal issue will again be raised before the Court.

DOE contends that United's claims are not ripe for judicial review. The defendants' argument is based on the rationale that until there is a final agency decision, no case or controversy exists between United and DOE. Several cases have dealt with the "ripeness" argument in a similar petroleum price regulation context and have held the plaintiffs' claims were ripe for judicial relief. *Phillips Petroleum Co. v. Federal Energy Administration*, 435 F.Supp. at 1245–1248; *Northern Natural Gas v. United States Dept. of Energy*, 464 F.Supp. 1145 (D.Del.1979). *Pennzoil Co. v. Department of Energy*, 466 F.Supp. at 241–243.

In *Phillips*, the standards for deciding whether judicial resolution is appropriate as articulated by the Supreme Court in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Toilet Goods Ass'n. v. Gardner*, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); and *Gardner v. Toilet Goods Ass'n.*, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967); were capsuled as follows:

> "[A] controversy is ripe for pre-enforcement judicial relief if an affirmative answer can be given to the following four questions:
>
> (1) Are the issues presented purely legal;
>
> (2) Are the issues based on final agency action;
>
> (3) Does the controversy have direct immediate impact on the plaintiff's business, and
>
> (4) Is the litigation calculated to expedite final resolution rather than delay or impede effective agency enforcement?"

435 F.Supp. at 1245.

DOE contends that none of the above standards are met in the present case and United's complaint should be dismissed.

■ First, DOE argues that issues raised by United are not purely legal. Rather

---

1. DOE argues in its brief "In the course of its administration proceedings, DOE may decide to withdraw its NOPV against United or to otherwise alter its position with regard to certain of United's pricing and banking practices." Defendants' Brief in Support of their Motion to Dismiss, p. 2.

DOE asserts that the predicate to addressing the procedural validity of the fictitious recovery rule is a factual determination—whether United has violated the rule. We reject this argument. Any determination of the procedural validity of the rule involves actions solely on the part of DOE. United is challenging certain procedures followed by DOE in adopting the fictitious recovery rule. See *Standard Oil Co. v. Department of Energy*, 596 F.2d 1029, 1039 (Em.App.1978); *Pennzoil Co. v. Department of Energy*, 466 F.Supp. at 241; *Northern Natural Gas v. United States Department of Energy*, 464 F.Supp. at 1154.

We also find United's claims arise out of final agency action. The fictitious recovery rule was promulgated in a formal manner, announced in the Federal Register, and absent judicial intervention, the rule is binding and enforceable against the plaintiff. DOE argues here that the agency action is not final since only the first step in DOE's enforcement proceeding has been undertaken. United is not challenging the DOE's enforcement proceeding but rather the validity of the fictitious rule. The mere possibility that DOE may withdraw its NOPV or otherwise alter its position on United's pricing and banking practices does not make the fictitious rule less final. See *Northern Natural Gas v. United States Department of Energy*, 464 F.Supp. at 1154–5. If United's complaint is dismissed "legal questions will be left unadjudicated while the regulations still apply with full force and effect." 464 F.Supp. at 1155, citing *Phillips Petroleum Co. v. Federal Energy Administration*, 435 F.Supp. 1239 (D.Del.1977).

We also find that the present controversy works a hardship on United in that United's day-to-day pricing decisions are directly and substantially affected and will continue to be affected for a long period. United's position is similar to that of plaintiff in *Phillips Petroleum Co. v. Federal Energy Administration*, 435 F.Supp. at 1246–7. If United charges the prices it believes it is entitled to charge, it risks substantial civil penalties and overcharge liability and if United forbears from such pricing, it may be forced to delay recovering costs to a degree destructive of its business. The burden on plaintiff here is "the direct effect on day-to-day business" contemplated by the Court in *Abbott Laboratories v. Gardner*, 387 U.S. at 152, 87 S.Ct. at 1517, and satisfies the ripeness requirement. See *Standard Oil Co. v. Department of Energy*, 596 F.2d at 1039, where the Court identified adverse consequences which are also likely to befall United: 1) impact on budgeting and planning functions; 2) exposure to multiple private, civil enforcement court litigation, 3) burdensome expense and discovery strategy which the DOE enforcement proceeding would entail; and 4) loss of reputation and good will stemming from public announcement of DOE proceedings for suspected "overcharging".

Finally, litigation of the procedural and substantive legality of the regulation will not impede effective agency enforcement. The administrative enforcement proceedings against United have spanned a number of years and apparently have gone no further than the first step. Judicial resolution of the disputed validity of the fictitious recovery rule may expedite future enforcement proceedings involving the rule by either narrowing them substantially or eliminating them entirely. See *Northern Natural Gas v. United States Dept. of Energy*, 464 F.Supp. at 1155; *Pennzoil Co. v. Department of Energy*, 466 F.Supp. at 243; *Phillips Petroleum Co. v. Federal Energy Administration*, 435 F.Supp. at 1247–8.

Under the standards articulated by the Supreme Court and applied by various other courts to claims similar to plaintiff here, we are convinced that United's action is ripe for judicial resolution.

The Motion to Dismiss will be denied.

## ORDER

AND NOW this 17th day of January, 1980, the Motion of Defendant to Dismiss is DENIED.