PHILADELPHIA HOUSING AUTHORITY

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT et al.

Civ. A. No. 78–1327.

United States District Court, E. D. Pennsylvania.

April 14, 1980.

Harold Cramer, Arthur W. Lefco, Jeffrey Cooper, Mesirov, Gelman, Jaffe, Cramer & Jamison, Philip M. Lord, David Searles, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff.

Peter F. Vaira, U. S. Atty., Alexander Ewing, Jr., Robert S. Forster, Asst. U. S. Attys., Philadelphia, Pa., Joan M. Wilbon, Dept. of Justice, Civ. Div., Economic Litigation Section, Washington, D. C., for Patricia R. Harris, Secretary of HUD, T. C. Maloney and D. Morrow.

Obermayer, Rebmann, Maxwell & Hippel, Barton A. Hertzbach, Philadelphia, Pa., for proposed intervenor Philadelphia Gas Works.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

Philadelphia Housing Authority (PHA) brings this injunctive and declaratory judgment action challenging the legality of certain regulations adopted by defendant United States Department of Housing and Urban Development (HUD). Plaintiff-Intervenors, Nellie Reynolds, Nancy Carroll, Muriel Cephas and the Resident Advisory Board (RAB) as well as the Philadelphia Gas Works (PGW) sought and were granted the right to intervene in this matter. The complaints of plaintiff and of the intervenors essentially mirror one another; they allege that HUD regulations, 24 C.F.R. §§ 865.401–865.410, adopted pursuant to the United States Housing Act of 1937 as amended (42 U.S.C. § 1437d) and section 7(d) of the Department of Housing and Urban Development Act (42 U.S.C. § 3535(d)), violate federal statutes and the Constitution. Specifically, plaintiffs contend that the disputed regulations violate 1) the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* because they are arbitrary and capricious; 2) the Brooke Amendment, 42 U.S.C. § 1437a, as they will require PHA tenants to pay more than 25% of their ad-

justed income on housing; 3) the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 *et seq.*, since HUD failed to issue an Environmental Impact Statement and 4) the due process guarantees of the Fifth and Fourteenth Amendments because the regulations were promulgated without giving tenants an opportunity to make meaningful comment.

 Now before the Court are defendant's motion for judgment on the pleadings, or in the alternative, for summary judgment as well as PHA's motion for summary judgment on Counts II, III and VI of its complaint and RAB's motion for summary judgment on all of its causes of action. In support of its motion, HUD argues, *inter alia*, that the Court lacks subject matter jurisdiction because the plaintiffs have not and may not ever suffer an injury as a result of the disputed regulations and thus the controversy is not "ripe" for judicial resolution. I agree with defendant's assessment that the instant matter is not ripe.[1] However, as the following discussion will show, want of ripeness does not mean that the court lacks subject matter jurisdiction. Rather, the ripeness doctrine discourages courts from exercising their jurisdiction in matters that are not ready for judicial resolution.

As § 865.401 states, the purpose of the disputed regulations is to reduce energy consumption in public housing by requiring, to the extent practicable, that the tenants' utilities be individually metered. There are two methods by which such individual metering would be accomplished under 24 C.F.R. 865.401 *et seq.* Under the retail service method, the tenant would be billed directly by the utility supplier but would receive some utility allowance from the housing authority. If the checkmeter system were adopted, the housing authority would continue to supply the tenants with their utilities, but each unit would be checkmetered and tenants would be sur-

---

1. Defendant also alleges that plaintiffs lack standing to bring this action. I have considered this argument but reject it, at least as to PHA, RAB and Mesdames Reynolds, Carroll and Cephas, who are PHA tenants.

charged for any utilities used in excess of what had been determined to be a reasonable amount.

Plaintiffs object to the proposed conversion to individual metering because they believe that it will not result in energy savings but will cause serious economic hardship to the already financially pressed tenants of Philadelphia Housing Authority. Additionally, they argue that individual metering is not an effective means of reducing energy use because most public housing units, through no fault of the tenants, are poorly insulated and generally are not designed or maintained to allow conservation of energy. Given these circumstances, plaintiffs maintain that the disputed regulations unjustly would penalize tenants for purportedly being wasteful of energy when in fact the physical condition of their housing makes conservation impossible.

Plaintiffs' arguments may indeed have merit; however, I believe that it would not be appropriate to exercise jurisdiction and decide these issues as the case now stands. In a triad of cases, *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (*Abbott*); *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967) (*Gardner I*); and *Gardner v. Toilet Goods Ass'n*, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967) (*Gardner II*), the United States Supreme Court set forth the standard to be applied by federal courts to cases, such as the instant one, in which plaintiff seeks injunctive and declaratory relief concerning agency regulations which have not yet been implemented. The Supreme Court found that federal courts have the authority to grant relief, under either the Declaratory Judgment Act or the Administrative Procedure Act, in cases challenging federal agency regulations at the pre-enforcement stage. Nonetheless, the Court observed:

A further inquiry must, however, be made. The injunctive and declaratory judgment remedies are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless they arise in the context of

a controversy "ripe" for judicial resolution. Without undertaking to survey the intricacies of the ripeness doctrine it is fair to say that its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by challenging parties. The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.

*Abbott, supra*, 387 U.S. at 148–49, 87 S.Ct. at 1515.

 Thus, in determining whether a case concerning agency regulations which have not been enforced is "ripe" for judicial review, a court should consider the fitness of the issues for judicial resolution and the hardship to the parties that would result should it decline to consider the case. Issues involving administrative actions are fit for judicial review if they do not require factual development and are purely legal and if there has been final agency action. *Id.* at 149–50, 87 S.Ct. at 1515–16. *Exxon Corp. v. F. T. C.*, 588 F.2d 895, 901 (3d Cir. 1978). The issues raised in the instant suit are not yet "fit" for judicial resolution because the contested regulations do not constitute "final agency action" within the meaning of *Abbott, supra*. Certainly 24 C.F.R. § 865.401 *et seq.* are final agency rules in one sense; they have been promulgated in a formal manner allegedly in conformity with the terms of the Administrative Procedure Act. The Supreme Court has found, however, that the finality of an agency action for purposes of determining the appropriateness of judicial review must be analyzed in a pragmatic way. *Abbott, supra*, 387 U.S. at 149, 87 S.Ct. at 1516.

In *Gardner I, supra*, the Court found judicial review of a challenge to a regulation promulgated by the Food and Drug Administration (FDA) to be premature. The con-

tested regulation provided that the Commissioner of the FDA could suspend certification of any person who refused duly authorized employees of the FDA access to all manufacturing facilities, processes and formulae involved in the manufacture of color additives. Plaintiffs argued that this regulation involved an impermissible exercise of authority because Congress had consistently denied the FDA such powers of free access except in the case of prescription drugs. In explaining why it did not find the case ripe for judicial resolution, the Supreme Court stated:

> . . . The regulation serves notice only that the Commissioner *may* under certain circumstances order inspection of certain facilities and data, and that further certification of additives *may* be refused to those who decline to permit a duly authorized inspection until they have complied in that regard. At this juncture we have *no idea whether or when* such an inspection will be ordered and what reasons the Commissioner will give to justify his order . . . We believe that judicial appraisal of these factors is likely to stand on a much surer footing in the context of a specific application of this regulation than could be the case in the framework of the generalized challenge made here. *Id.* at 163–64, 87 S.Ct. at 1524 (emphasis in the original).

Similarly, in the instant case, judicial review of 24 C.F.R. § 865.401 would be premature because the injuries forecast by the plaintiffs may never occur. Under the terms of the regulations themselves the conversion to individual metering is not inevitable. 24 C.F.R. § 865.404 requires that, prior to the conversion to individual metering, every public housing authority must make a benefit/cost analysis to determine whether such a change would be economical. If the benefit/cost study shows that the conversion cannot be financially justified, no change will occur in the metering system. PHA has not conducted the requisite benefit/cost analysis; consequently, at this time it is as possible as not that no conversion to individual metering will take place in PHA housing under the contested regulations.[2]

Turning now to the second factor to be considered in deciding the ripeness of a case challenging an agency regulation, I find that plaintiffs would not suffer any significant hardship if I declined to consider the merits of the instant case at this time. Until the requisite benefit/cost study is completed, HUD cannot require PHA to convert its existing utility systems. Moreover, 24 C.F.R. § 865.407(b) provides that before the conversion can be made, the tenants' leases must be modified. Under the terms of 24 C.F.R. § 866.3, the leases of public housing authority tenants cannot be changed without giving them a minimum of thirty days written notice as well as an opportunity to present written comment. In addition, should HUD decide that PHA utilities are to be converted to the checkmeter system, tenants will be given a six month grace period before they are surcharged for excess utilities consumption. 24 C.F.R. § 865.407(c). In short, given the provisions of the regulations in question, plaintiffs cannot complain of any immediate hardship they will suffer as a result of my decision to decline to consider their case at this time.

I also note that a proposed amendment to 24 C.F.R. § 865, appearing in the Federal Register on December 28, 1978 (Vol. 43 at 60,854), suggests that HUD now questions the wisdom of its own plan to give priority to the conversion of public housing utilities to an individual metering system. This amendment or subpart would require all public housing agencies, such as Philadel-

---

**2.** I recognize that the implementation of 24 C.F.R. § 865.401 *et seq.* is more imminent in those "scattered site" housing units which already have individual meters although PHA continues to pay for the utilities. Nonetheless, under the regulations, it is not a foregone conclusion that the tenants in the scattered site units will be required to pay for their own utilities or if they were so required that the payments would be in excess of 25% of their incomes. For example, 24 C.F.R. § 866.3 mandates that tenants be given the opportunity to comment before the terms of their leases may be changed.

phia Housing Authority, to conduct "energy audits" to determine which "energy conservation measures" have the greatest potential for saving energy. The "energy conservation measures" described in the proposed subpart are improvements to the physical conditions of public housing such as insulation and weather stripping. The notice in the Federal Register also states:

> This proposed subpart requires only that, when funds are available, the PHA [public housing agency] shall accomplish the energy conservation measures in the order of priority determined by the energy audits. HUD plans that concurrently with the issuance of this proposed rule the final rule pertaining to individual metering of utilities, Subpart D, 24 C.F.R. Part 865, will be *modified* by publication of a proposed rule making it consistent with this Subpart. (emphasis added.) 43 Fed.Reg. 60,854 (1978).

Bearing in mind the Supreme Court's admonition in *Abbott Laboratories v. Gardner, supra,* that courts should avoid entanglement in abstract disagreements over administrative policies when the effects of an administrative decision have not yet been felt in a concrete way by the challenging parties, I decline to decide the merits of the instant case at this time.[3]

The following order is entered.

### ORDER

AND NOW, this 14th day of April, 1980, upon consideration of defendant's motion for judgment on the pleadings, or in the alternative, for summary judgment and the motions for summary judgment filed by plaintiffs as well as the argument and memoranda of the parties, IT IS ORDERED that the complaints filed by Philadelphia Housing Authority, by Nellie Reynolds, Nancy Carroll, Muriel Cephas and the Resident Advisory Board and by Philadelphia Gas Works are DISMISSED without prejudice.

---

3. The defendant has cited an order filed by the Hon. George L. Hart, Jr. of the District Court of the District of Columbia granting summary judgment in favor of the government in a case raising the same issues as presented in the matter now before me. Although the complaint in *Massachusetts Union of Public Housing Tenants v. Patricia Harris,* (No. 78–1895, D.D.C.), is styled a class action, there is no evidence that the class was ever certified. Moreover, defendant has never suggested that the decision is binding on this Court. Accordingly, I view Massachusetts Union, *supra,* as merely another authority to consider in arriving at a decision in this case if and when the merits are reached.