# United States Court of Appeals
## For the First Circuit

No. 02-1738

JULIANNE M. BOWLER, in her capacity as Commissioner of Insurance
of the Commonwealth of Massachusetts; THOMAS J. CURRY, in his
capacity as Commissioner of Banks of the Commonwealth of
Massachusetts; COMMONWEALTH OF MASSACHUSETTS,

Petitioners,

v.

JOHN D. HAWKE, in his capacity as Comptroller of the Currency of
the United States; THE OFFICE OF THE COMPTROLLER OF THE CURRENCY,
an Agency of THE UNITED STATES OF AMERICA,

Respondents.

PETITION FOR REVIEW OF DETERMINATION BY COMPTROLLER
OF THE CURRENCY OF THE UNITED STATES

Before

Torruella, Circuit Judge,
John R. Gibson,* Senior Circuit Judge,
and Howard, Circuit Judge

    Thomas A. Barnico, Assistant Attorney General, with whom
Thomas F. Reilly, Attorney General, was on brief for the
petitioners.
    John B. Williams, Scott A. Sinder, and Christy Hallam
DeSanctis, and Collier, Shannon, Scott, PLLC on brief for amici
curiae the Independent Insurance Agents of America, Inc., and the
National Association of Professional Insurance Agents, Inc.
    John W. Bauer, Andrew J. Beal, Eric A. Smith and Rackemann,
Sawyer & Brewster, on brief for amicus curiae the National
Association of Insurance Commissioners.
    Douglas B. Jordan, with whom Julie L. Williams, Daniel P.
Stipano, and L. Robert Griffin, were on brief for the
respondents.

Brenda R. Sharton, Collin O'Connor Udell, and Goodwin Procter, LLP on brief for amici curiae the Massachusetts Bankers Association, American Bankers Association, American Bankers Insurance Association, America's Community Bankers, and Independent Community Bankers of America.

Kenneth F. Ehrlich, John J. O'Connor, and Peabody & Arnold, LLP, on brief for amicus curiae Banknorth, N.A.

———————————————

February 13, 2003

———————————————

*Of the Eighth Circuit, sitting by designation.

**HOWARD**, **Circuit Judge**. The Commonwealth of Massachusetts and its Commissioners of Insurance and Banks (collectively, "Massachusetts") have filed a petition asking that we "vacate, set aside, or otherwise annul" an opinion of the Office of the Comptroller of the Currency ("OCC"). Massachusetts objects to the OCC's determination that the Gramm-Leach-Bliley Act of 1999 ("GLBA"), Pub. L. No. 106-102, 113 Stat. 1338 (1999), preempts three provisions of a Massachusetts consumer protection statute and their corresponding regulations.

In filing the petition with this Court, Massachusetts relies on GLBA § 304(a), 15 U.S.C. § 6714(a), which provides:

> In the case of a regulatory conflict between a State insurance regulator and a Federal regulator regarding insurance issues, including whether a State law, rule, regulation, order, or interpretation regarding any insurance sales or solicitation activity is properly treated as preempted under Federal law, the Federal or State regulator may seek expedited judicial review of such determination by the United States Court of Appeals for the circuit in which the State is located or in the United States Court of Appeals for the District of Columbia Circuit by filing a petition for review in such court.

Because the OCC's determination was set forth in an informal opinion letter which does not appear to carry the force of law, presage imminent coercive conduct, or seemingly otherwise bind Massachusetts, we became concerned that the petition seeks an advisory opinion and thus fails to describe a "regulatory conflict" amounting to a case or controversy. Accordingly, we solicited

supplemental briefs addressing our subject matter jurisdiction. See, e.g., Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701-02 (1982) (recognizing that the federal judicial power conferred by U.S. Const. art. III, § 2, cl. 1, extends only to cases and controversies and that a court must on its own motion raise the issue if doubtful about its power to adjudicate a matter). Having considered the parties' submissions, we conclude that the OCC opinion letter does not create a justiciable "regulatory conflict" within the meaning of the GLBA. We therefore dismiss the petition.

The facts relevant to our jurisdictional analysis are undisputed. The GLBA, which became effective in 1999, amended several federal statutes that govern financial institutions. Among its many goals, the GLBA sought to facilitate affiliations between banks and insurance companies and to permit depository institutions and their affiliates to offer insurance products. See generally, Pub. L. No. 106-102, 113 Stat. 1338, tit. I (codified in scattered sections of 12 and 15 U.S.C.). Because the states have historically regulated the insurance industry, see, e.g., the McCarran-Ferguson Act of 1945, 15 U.S.C. § 1101 (recognizing this practice and declaring it to be in the public interest), the GLBA includes a number of provisions specifying whether and how much it preempts otherwise applicable state insurance laws.

Of particular concern for present purposes is GLBA §
104(d)(2), 15 U.S.C. § 6701(d)(2), which addresses the extent to
which the states may continue to regulate the insurance sales,
solicitation, and cross-marketing activities of depository
institutions and their affiliates.  GLBA § 104(d)(2)(A), 15 U.S.C.
§ 6701(d)(2)(A), sets forth a general preemption provision.  The
provision reads:

> In accordance with the legal standards for
> preemption set forth in the decision of the
> Supreme Court of the United States in <u>Barnett
> Bank of Marion County N.A.</u> v. <u>Nelson</u>, 517 U.S.
> 25 (1996), no State may, by statute,
> regulation, order, interpretation, or other
> action, prevent or significantly interfere
> with the ability of a depository institution,
> or an affiliate thereof, to engage, directly
> or indirectly, either by itself or in
> conjunction with an affiliate or any other
> person, in any insurance sales, solicitation,
> or crossmarketing activity.

GLBA § 104(d)(2)(B), 15 U.S.C. § 6701(d)(2)(B), refines the scope
of subparagraph (A)'s general preemption provision by stating that
state laws regulating the sales, solicitation, and cross-marketing
activities of depository institutions and their affiliates are not
preempted under subparagraph (A) so long as they "are substantially
the same as but no more burdensome or restrictive than" thirteen
statutory categories described in subsequent clauses. GLBA §
104(d)(2)(C)(iii), 15 U.S.C. § 6701(d)(2)(C)(iii), provides this
additional interpretive gloss:

> Nothing in this paragraph shall be construed -

**(I)** to limit the applicability of the decision of the Supreme Court in <u>Barnett Bank of Marion County N.A.</u> v. <u>Nelson</u>, 517 U.S. 25 (1996) with respect to any State statute, regulation, order, interpretation, or other action that is not referred to or described in subparagraph (B); or

**(II)** to create any inference with respect to any State statute, regulation, order interpretation, or other action that is not described in this paragraph.

On May 30, 2000, the Massachusetts Bankers Association, a trade association, requested the OCC's opinion whether GLBA § 104(d)(2) preempts three provisions of a Massachusetts statute entitled "An Act Providing Consumer Protection Relative to the Sale of Insurance by Banks." That state law regulates the sales, solicitation, and cross-marketing activities of banks within Massachusetts.

The first of the three provisions discussed in the letter prohibits non-licensed bank personnel from referring bank customers to a licensed insurance agent or broker except upon an inquiry initiated by the customer. <u>See</u> Mass. Gen. Laws ch. 167F, § 2A (1998); <u>see also</u> Mass. Regs. Code tit. 211, § 142.05(3) (1998); Mass. Regs. Code tit. 209, § 49.06(3) (1998). The second prohibits non-licensed bank personnel from receiving additional compensation for insurance referrals regardless whether the compensation is conditioned upon the sale of insurance. <u>See</u> Mass. Gen. Laws ch. 167F, § 2A (1998); <u>see also</u> Mass. Regs. Code tit. 211, § 142.05(3) (1998); Mass. Regs. Code tit. 209, § 49.06(3) (1998). The third

prohibits banks from making an insurance solicitation in connection with an application for an extension of credit until after the application has been approved and, in the case of an extension of credit secured by a mortgage on real estate, until after the customer has accepted the bank's written commitment to extend credit. See Mass. Gen. Laws ch. 167F, §§ 2A(b)(4)(ii) and (iii); see also 211 Mass. Regs. Code tit. 211, § 142.06; Mass. Regs. Code tit. 209, § 49.06(5).

The OCC published notice of the preemption request, see 65 Fed. Reg. 43827 (July 14, 2000), and solicited comments on whether GLBA § 104(d)(2) preempts the state laws in question. The OCC received a total of 110 comments in response to the notice, including comments submitted by Massachusetts. Some comments argued in favor of preemption, some argued against, and some questioned the OCC's authority to weigh in on the subject at all because Congress did not delegate to the OCC authority to determine whether specific state laws are preempted by GLBA § 104(d)(2).

On March 18, 2002, the OCC issued a letter opining that GLBA § 104(d)(2) does indeed preempt the Massachusetts laws at issue. The opinion almost immediately led a number of banking interests to file waiver requests with state regulators seeking permission to engage in activities proscribed by these laws. Massachusetts has held these requests in abeyance, pending resolution of its petition.

In the letter, the OCC responded to comments questioning its right to take a position on the preemptive effect of GLBA § 104(d)(2) by pointing to case law and statutes recognizing, with varying degrees of explicitness, its authority "to interpret, in the first instance, federal laws affecting national bank powers." Importantly, the OCC implicitly conceded that Congress did not authorize it to effect specific GLBA § 104(d)(2) preemptions through administrative conduct - e.g., promulgating regulations, conducting adjudications, issuing licenses - that carries the force of law. No party or amicus curiae has taken a contrary position, and our independent review of the GLBA persuades us that the OCC reasonably has concluded that, in the present context, it may do nothing more than provide "informal agency guidance of a sort commonly and traditionally offered by the OCC in its role as supervisor of national banks." OCC Brief, at 19 (characterizing the nature of the March 18, 2002 opinion letter).[1]

Because the opinion letter constitutes no more than informal agency guidance to banks and other interested parties, it does not in these circumstances create a "regulatory conflict" giving rise to a case or controversy between OCC and Massachusetts.

---

[1]Because we conclude that Massachusetts's petition does not describe a "regulatory conflict" within the meaning of GLBA § 304(a), we do not resolve whether the OCC's issuance of the opinion letter was ultra vires, as the Commonwealth and certain amici argue. Rather, for purposes of our analysis, we shall assume arguendo that the opinion letter was authorized.

-8-

It is true that informal agency action not carrying the force or effect of law can give rise to a case or controversy where it meets the test for ripeness set forth in Abbott Laboratories, Inc. v. Gardner, 387 U.S. 136, 148-49 (1967) (matter is ripe if it is fit for judicial decision and if withholding court consideration would cause the parties hardship). For example, the opinion letter might well affect banking and insurance interests differently and sufficiently to give rise to a case or controversy between such interests and the OCC. But Abbott requires a showing that the informal action somehow imposes a legal or practical constraint on the party seeking to invoke federal court jurisdiction. See generally N.Y. Stock Exch. v. Bloom, 562 F.2d 736, 741-43 (D.C. Cir. 1977) (declining to find Abbott's hardship requirement met where informal agency action had no immediate effect on the parties invoking the court's jurisdiction); Pierce, Administrative Law Treatise, § 15.15 (4th ed. 2002) (discussing how courts assessing the justiciability of informal agency action under Abbott have focused on whether the action has some "binding effect" on the plaintiff or petitioner); cf. Nat'l Automatic Laundry and Cleaning Council v. Schultz, 443 F.2d 689, 696-97 (D.C. Cir. 1971) (holding that Labor Department opinion letter concluding that plaintiff's members were violating the Fair Labor Standards Act gave rise to a justiciable controversy because plaintiff's members faced a "Hobson's choice" of either conforming their business practices to

-9-

the agency's view or risking strong statutory sanctions in any enforcement action under the Act). Here, there has been no such showing with respect to Massachusetts.

In their supplemental briefs, the parties assert that the opinion letter impairs Massachusetts's ability to enforce its laws. But as we already have observed, the letter neither has legal effect nor presages future coercion by the OCC, which claims no entitlement to restrain the states from enforcing preempted law or to authorize third parties to engage in conduct forbidden by preempted law. We thus fail to see how the letter circumscribes Massachusetts's ability to enforce its laws in any meaningful way. If banks within Massachusetts were to act in defiance of state law, the opinion letter in no way affects Massachusetts's entitlement or ability to take responsive action.

The parties also suggest that the OCC's issuance of the opinion letter gives rise to a case or controversy because it so strengthened the hand of banking interests seeking to avoid Massachusetts law that it led them to file waiver requests. But it is difficult to see how the filing of a waiver request intrudes on state prerogatives sufficiently to cause the State constitutional injury. See Vt. Agency of Natural Resources v. United States, 529 U.S. 765, 771 (2000) (describing the "injury in fact" requirement of Article III standing). We have found no authority for the proposition that a state may bring an action in an Article III

court against the author of, say, an authoritative but non-binding legal opinion expressed in a Securities and Exchange Commission no-action letter or an Internal Revenue Service private-letter ruling (or, for that matter, in a law review article or treatise) simply because the expression of the opinion prompts a third party to challenge the lawfulness of some state enactment under federal law. So too here. Because we are unable to discern how the opinion letter constrains Massachusetts in such a way as to give rise to a case or controversy between Massachusetts and the OCC, we do not regard this matter to be a "regulatory conflict" within the meaning of GLBA § 304(a). We so read the statute because a contrary construction would raise grave concerns about its constitutionality as applied here, see, e.g., Harris v. United States, 122 S. Ct. 2406, 2413 (2002), and because there are situations governed by GLBA § 304(a) that raise no Article III concerns, see Petitioner's Initial Brief at 24-25 (listing clearly justiciable conflicts covered by GLBA § 304(a)). Our holding therefore does not render the statute insignificant or superfluous. See, e.g., Duncan v. Walker, 533 U.S. 167, 174 (2001) (counseling against statutory constructions that have such effects).

We close on a practical note. The questions Massachusetts's petition seeks to have us adjudicate are unlikely to be purely legal. It is apparent that, in deciding whether state laws are preempted by GLBA § 104(d)(2), courts are going to have to

-11-

make judgment calls about the extent to which the laws hinder the ability of depository institutions to engage in sales, solicitation, and cross-marketing activities, as a factual matter. Such judgment calls will often be better made on an evidentiary record created in litigation in the trial court. See <u>Toilet Goods Assn., Inc.</u> v. <u>Gardner</u>, 387 U.S. 158, 163-64 (1967).

**<u>Petition dismissed.</u>**