**MASSACHUSETTS BANKERS ASSOCIATION, INC., et al.**

v.

**Julianne M. BOWLER and Steven L. Antonakes**

**No. Civ.A.03–11522–RWZ.**

United States District Court, D. Massachusetts.

Jan. 10, 2005.

Brenda R. Sharton, Collin O'Connor Udell, William J. Connolly, III, Goodwin Procter, LLP, Boston, MA, for Plaintiffs.

Thomas A. Barnico, Attorney General's Office, Boston, MA, for Defendants.

*MEMORANDUM OF DECISION*

ZOBEL, District Judge.

In May 2000, the Massachusetts Bankers Association, Inc. ("MBA") requested the opinion of the Office of the Comptroller of the Currency of the United States ("OCC"), the primary regulator of federally chartered banks, whether the Gramm–Leach–Bliley Act of 1999, 15 U.S.C. § 6701, preempted certain provisions of the Massachusetts Consumer Protection Act Relative to the Sale of Insurance by Banks, Mass. Gen. Laws ch. 167F, § 2A. On March 18, 2002, the OCC opined that the provisions were preempted by federal law. Thereafter, pursuant to 15 U.S.C. § 6714(a),[1] the Massachusetts Commissioners of Insurance and Banks and the Commonwealth of Massachusetts sought review in the First Circuit Court of Appeals of the "regulatory conflict" resulting from the OCC opinion. The First Circuit dismissed the case for lack of jurisdiction

---

1. Section 6714(a) states:

In the case of a regulatory conflict between a State insurance regulator and a Federal regulator regarding insurance issues, including whether a State law, rule, regulation, order, or interpretation regarding any insurance sales or solicitation activity is properly treated as preempted under Federal law, the Federal or State regulator may seek expedited judicial review of such determination by the United States Court of Appeals for the circuit in which the State is located or in the United States Court of Appeals for the District of Columbia Circuit by filing a petition for review in such court.

because there was no "regulatory conflict." *Bowler v. Hawke*, 320 F.3d 59, 64 (1st Cir.2003).

Thereafter, MBA and some of its members, Banknorth, N.A. ("Banknorth"), Cape Cod Bank and Trust Company, N.A. ("CCBT"), Citizens–Union Savings Bank, Eastern Bank, First Federal Savings Bank of America ("FFS"), The Savings Bank, Stoneham Savings Bank, and Woronoco Savings Bank, filed a Complaint in this Court against Julianne Bowler, Massachusetts Commissioner of Insurance, and Thomas Curry, Massachusetts Commissioner of Banks, challenging certain Massachusetts laws that prohibit them from selling, soliciting, and marketing insurance products. Plaintiffs later amended their Complaint and replaced defendant Thomas Curry with Steven Antonakes, the successor Commissioner of Banks.

Plaintiffs challenge four provisions of Massachusetts law, which they have labeled as the Referral Prohibition, the Referral Fee Prohibition, the Waiting Period Restriction, and the Separation Restriction. The Referral Provision, Mass. Gen. Laws ch. 167F, § 2A(b)(2), allows officers, tellers, and other bank employees who are not licensed insurance agents to refer a bank customer to a licensed insurance agent only when the customer inquires about insurance. The same statute includes the Referral Fee Prohibition, which forbids banks from paying their employees for making the referrals to their insurance agents. The Waiting Period Restriction, Section 2A(b)(4), allows banks to solicit insurance sales to loan applicants only after the application for the extension of credit is approved, and such approval and required disclosures have been communicated to and acknowledged by the applicant in writing. The banks are required to retain the solicitation, approval, and acknowledgment as a permanent record. Mass. Gen. Laws ch. 167F, § 2A(b)(4)(ii). Finally, the Separation Restriction, Section 2A(b)(3), requires insurance solicitation to be conducted in a physically separate area of the bank, with a few exceptions.

Count One of the Amended Complaint, brought by Banknorth, CCBT, FFS, and other members of the MBA, who are national banks or federal savings associations, asserts that the challenged Massachusetts provisions are federally preempted. Count Two, brought by CUSB, Eastern, TSB, Stoneham, Woronoco, and MBA as representative of its Massachusetts chartered depository institutions, places defendants between the proverbial rock and a hard place, in that it claims that any enforcement of the state provisions against them constitutes arbitrary, discriminatory action since they do not apply to national banks and federal savings associations.

Plaintiffs and defendants now move for summary judgment as to Count One. Four amici side with plaintiffs. In addition, defendants seek to dismiss Count Two on the ground that it is barred by the Eleventh Amendment. However, the Court allowed the parties' subsequent Joint Motion to Stay the Consideration of Defendants' Motion to Dismiss Count Two until after a decision on Count One.

■ Plaintiffs argue that the four challenged Massachusetts provisions are preempted by the Gramm–Leach–Bliley Act ("GLBA"), which provides that:

In accordance with the legal standards for preemption set forth in the decision of the Supreme Court of the United States in *Barnett Bank of Marion County N.A. v. Nelson*, 517 U.S. 25, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996), no State may, by statute, regulation, order, interpretation, or other action, prevent or significantly interfere with the ability

of a depository institution, or an affiliate thereof, to engage directly or indirectly, either by itself or in conjunction with an affiliate or any other person, in any insurance sales, solicitation, or cross marketing activity.

15 U.S.C. § 6701(d)(2)(A). When the law at issue "specifically relates to the business of insurance[,]" as here, the McCarran–Ferguson Act anti-preemption rule does not apply. *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 38, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996), *citing* 15 U.S.C. § 1012(b). The text of the GLBA contains explicit language indicating its intent to preempt certain state laws. *See* 15 U.S.C. § 6711 ("The insurance activities of any person (including a national bank exercising its power to act as agent under section 92 of Title 12) shall be functionally regulated by the States, *subject to section 6701 of this title.*")(emphasis added). The *Barnett* court stated that the legal standard "[i]n defining the preemptive scope of statutes and regulations granting a power to national banks [is] that normally Congress would not want States to forbid, or to *impair significantly*, the exercise of a power that Congress explicitly granted." *Barnett Bank*, 517 U.S. at 33, 116 S.Ct. 1103 (emphasis added).[2] Thus, the issue is whether the challenged provisions "prevent or significantly interfere" with the ability of banks to sell, solicit, or cross market insurance. As the First Circuit observed, the outcome requires courts to "make judgment calls about the extent to which the laws hinder the ability of depository institutions to engage in sales, solicitation, and cross-mar-

keting activities, as a factual matter." *Bowler v. Hawke*, 320 F.3d 59, 64 (1st Cir.2003).[3]

The parties agree that many of plaintiffs' customers are potential buyers of their insurance products. Agreed–To Local Rule 56.1 Statement of Undisputed Facts at ¶ 34. However, the undisputed data shows that plaintiffs referred very few, if any, of their customers to their insurance affiliates. For example, Banknorth has 360 branches in six northeastern states, including 121 Massachusetts branches serving approximately 380,000 retail households. *Id.* at ¶ 24. During the first six months of 2003, Banknorth did not refer a single Massachusetts customer to its insurance affiliates, even though Massachusetts is its largest customer base. *Id.* at ¶ 24 and ¶ 26. The Maine, New Hampshire, and Vermont branches referred 4,200 customers, 2,016 customers, and 1,522 customers, respectively, to their insurance affiliates. *Id.* at ¶ 25. CCBT and FFS, located in Massachusetts only, also had a minimal number of employee referrals for insurance products. *Id.* at ¶ 27 and ¶ 33.

█ The dismal number of referrals is clearly a result of the statutory structural impediments to cross marketing insurance products, which include the requirement that any solicitation attempt must capriciously rely on the customer initiating an inquiry. Defendants' argument that the Massachusetts laws "merely restrict the time, place, or manner in which the bank might offer the insurance product," Def.'s Mem. at 18, belies the undisputed data

---

2. Defendants' contention that the state laws at issue must prohibit insurance sales in order to be preempted misinterprets *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 38, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996), and asks the Court to ignore the plain lan-

guage of the GLBA in contravention to the rules of statutory construction.

3. Because the resolution of this issue does not require statutory interpretation, the question of whether the OCC letter is entitled to deference need not be addressed.

that these restrictions substantially prohibit the banks from selling insurance. Defendants' reliance on the insurance sales figures in dollar amounts of the banks' insurance entities and affiliates is misplaced as they do not reflect the banks' ability to sell, solicit, or cross market insurance products. Therefore, because the Referral Prohibition and the Referral Fee Prohibition significantly curtail the banks' ability to cross market, solicit, and thereby sell insurance products, they are preempted.

■ The Waiting Period Restriction, plaintiffs' next objection, does more than merely affect the timing of plaintiffs' ability to solicit insurance sales. Because most retail loans require some form of insurance before the funds are advanced, loan applicants will likely secure their insurance before their loan applications are approved, thereby foreclosing plaintiffs' ability to sell the insurance. Furthermore, this restriction increases the banks' administrative costs since they must track the status of the loan applications to insure that no applicant is solicited prematurely. Defendants focus on the exception to the restriction, which says that the restriction "shall not apply in situations where a bank contacts a customer in the course of direct or mass marketing of insurance products to a group of persons in a manner that bears no relation to any such person's loan application or credit decision." Mass. Gen. Laws ch. 167F, § 2A(b)(4)(ii). However, before engaging in mass marketing, plaintiffs must expend more resources to identify and delete the names of the mortgage loan applicants in order to comply with Mass. Gen. Laws ch. 167F, § 2A(b)(4)(iii),

which allows the bank to approach a mortgage loan applicant concerning an insurance purchase only after the applicant accepts the commitment. Mass. Gen. Laws ch. 167F, § 2A(b)(4)(iii). More important, the exception which allows plaintiffs to engage in blind mass marketing does not alter the fact that the Waiting Period Restriction prevents them from soliciting and cross marketing to the very customers who are likely to buy the product. Thus, the Waiting Period Restriction significantly interferes with the banks' ability to solicit, cross market and sell their insurance products, and is, therefore, preempted.[4]

■ Finally, the Separation Restriction requires plaintiffs to incur more costs since they need more physical space to comply. Defendants' response that the Commissioner may waive this requirement undercuts its necessity. As one amicus brief points out, requiring a customer to see two separate employees at two separate times at two separate locations within the bank defeats the bank's ability to effectively cross market its banking and insurance product. Brief of American Bankers Association at 18. Because Mass. Gen. Laws ch. 167F, § 2A(b)(2), § 2A(b)(3), and § 2A(b)(4) seriously impedes plaintiffs' ability to solicit, cross market and sell insurance products, these provisions are preempted by the GLBA, 15 U.S.C. § 6701(d)(2)(A). Deference to the GLBA (not the OCC opinion) dictates this conclusion, even if Massachusetts enacted these laws to protect its citizens and consumers. *Assoc. of Banks in Insur., Inc. v. Duryee,* 270 F.3d 397, 404 (6th Cir.2001). This ruling does prohibit the state from hindering the banks' attempts to sell, solicit, and

---

4. Preemption of the Waiting Period Restriction will in no way undermine the requirement that depository institutions not lead a customer to believe an extension of credit is contingent upon the purchase of an insurance product from the institution or its affiliates, or an agreement by the customer not to get the insurance from an unaffiliated entity. 12 U.S.C. § 1831x(b).

cross market insurance; it does not interfere with the state's ability to regulate insurance.

Accordingly, plaintiffs' motion for partial summary judgment is ALLOWED as to Count One, and defendants' motion for summary judgment as to Count One is DENIED.